Docket No. 23-11211-D

_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

_____

VARIOUS REINSURERS AND RETROCESSIONAIRES,

*Plaintiffs-Appellants,*

v.

GENERAL ELECTRIC INTERNATIONAL, INC., ET AL.,

*Defendants-Appellees.*

_____

On appeal from the United States District Court for the Northern District of
Georgia, Atlanta Division

District Court Case No. 1:21-cv-04751-VMC

_____

## APPELLANTS' BRIEF
_____

Michael J. Tricarico
New York Bar No. 2466878

**KENNEDYS CMK LLP**

570 Lexington Avenue
New York, NY 10011
(212) 252-0004 (Telephone)
(212) 832-4920 (Fax)
Michael.Tricarico@kennedyslaw.com

Jonathan D. Kramer
Georgia Bar No. 428967
Brandon R. Gossett
Georgia Bar No. 120424

**FIELDS HOWELL LLP**

665 8th Street NW
Atlanta, GA 30318
(404) 214-1250 (Telephone)
(404) 214-1251 (Fax)
jkramer@fieldshowell.com
bgossett@fieldshowell.com

*Counsel for Appellants*

*Various Reinsurers and Retrocessionaires v. General Electric Int'l, Inc., et al.*

No. 23-11211-D

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

In compliance with Eleventh Circuit Rule 28-1(b), Plaintiff-Appellants disclose that the following trial judges, attorneys, persons, associations of persons, firms, partnerships, and corporations may have an interest in the outcome of this appeal:

o Abu Dhabi National Insurance Company PJSC (Ticker – ADX:ADNIC) – Appellant

o ACE American Insurance Company – Appellant

o Aegis Managing Agency Limited – Managing Agent of Appellant Certain Underwriters at Lloyd's, underwriting through Lloyd's Syndicate No. 1225 for the 2019 year of account

o African Reinsurance Corporation – Appellant

o Agency Partners Limited – Managing Agent of Appellant Certain Underwriters at Lloyd's, underwriting through Lloyd's Syndicate No. 2791 for the 2019 year of account

o AIG MEA Limited – Appellant

C-1

*Various Reinsurers and Retrocessionaires v. General Electric Int'l, Inc., et al.*
No. 23-11211-D

o American International Group, Inc. (Ticker – NYSE:AIG) – Ultimate Beneficial Owner of Talbot Underwriting Ltd and Appellant AIG MEA Limited

o AXA SA (Ticker – OTCMKTS:AXAHY)– Ultimate Beneficial Owner of Appellant XL Insurance Company

o Associated Electric & Gas Insurance Services Limited – Ultimate Beneficial Owner of Aegis Managing Agency Limited

o Berkshire Hathaway Inc. (Ticker – NYSE:BRK.A) – Ultimate Beneficial Owner of Appellant Berkshire Hathaway International Insurance Limited

o Berkshire Hathaway International Insurance Limited – Appellant

o Calvert, Victoria Marie – United States District Judge

o Carroll, Christopher R. – Counsel for Appellants

o Certain Underwriters at Lloyd's, underwriting through Lloyd's Syndicate No. 0033 for the 2019 year of account – Appellant

o Certain Underwriters at Lloyd's, underwriting through Lloyd's Syndicate No. 0623 for the 2019 year of account – Appellant

o Certain Underwriters at Lloyd's, underwriting through Lloyd's Syndicate No. 1084 for the 2019 year of account – Appellant

C-2

*Various Reinsurers and Retrocessionaires v. General Electric Int'l, Inc., et al.*
No. 23-11211-D

o Certain Underwriters at Lloyd's, underwriting through Lloyd's Syndicate No. 1183 for the 2019 year of account – Appellant

o Certain Underwriters at Lloyd's, underwriting through Lloyd's Syndicate No. 1221 for the 2019 year of account – Appellant

o Certain Underwriters at Lloyd's, underwriting through Lloyd's Syndicate No. 1225 for the 2019 year of account – Appellant

o Certain Underwriters at Lloyd's, underwriting through Lloyd's Syndicate No. 2001 for the 2019 year of account – Appellant

o Certain Underwriters at Lloyd's, underwriting through Lloyd's Syndicate No. 2121 for the 2019 year of account – Appellant

o Certain Underwriters at Lloyd's, underwriting through Lloyd's Syndicate No. 2791 for the 2019 year of account – Appellant

o China Investment Corporation – Ultimate Beneficial Owner of Chaucer Syndicates Limited

o Chaucer Syndicates Limited – Managing Agent of Appellant Certain Underwriters at Lloyd's, underwriting through Lloyd's Syndicate No. 1084 for the 2019 year of account

o Chubb Limited (Ticker – NYSE:CB) - Ultimate Beneficial Owner of Appellant ACE American Insurance Company

C-3

*Various Reinsurers and Retrocessionaires v. General Electric Int'l, Inc., et al.*
No. 23-11211-D

o  GE Power – Appellee

o  GE Power Services Engineering – Appellee

o  General Electric Company (Ticker – NYSE:GE) – Appellee

o  General Electric International, Inc. – Appellee

o  General Insurance Corporation of India (Ticker – BSE:540755, NSE:GICRE) – Ultimate Beneficial Owner of Appellant GIC Re South Africa Limited

o  GIC Re South Africa Limited – Appellant

o  Gossett, Brandon R. – Counsel for Appellant

o  Hannover Re SE (Ticker – OTCMKTS:HVRRY) – Appellant

o  Hannover Rück SE (Ticker – OTCMKTS:HVRRY) – Ultimate Beneficial Owner of Appellant Certain Underwriters at Lloyd's, underwriting through Lloyd's Syndicate No. 2121 for the 2019 year of account

o  HDI Haftpflichtverband der Deutschen Industrie V.a.G. – Non-Profit Association Exercising Ownership of Hannover Rück SE and HDI Global SE

o  HDI Global SE – Appellant

*Various Reinsurers and Retrocessionaires v. General Electric Int'l, Inc., et al.*
No. 23-11211-D

- o Hiscox Syndicates Limited – Managing Agent of Appellant Certain Underwriters at Lloyd's, underwriting through Lloyd's Syndicate No. 0033 for the 2019 year of account

- o Hiscox Ltd (Ticker – OCTMKTS:HCXLY) – Parent of Hiscox Syndicates Limited

- o Kaufman, Thomas C. – Counsel for Appellants

- o Kramer, Jonathan D. – Counsel for Appellants

- o Map Equity Limited – Ultimate Beneficial Owner of Agency Partners Limited

- o Mapfre Re, Compania De Reaseguros, S.A. – Appellant

- o Mapfre S.A. (Ticker – OTCMKTS:MPFRY) – Ultimate Beneficial Owner of Appellant Mapfre Re, Compania De Reaseguros, S.A.

- o MS Amlin Corporate Member Limited – Corporate Member of Appellant Certain Underwriters at Lloyd's, underwriting through Lloyd's Syndicate No. 2001 for the 2019 year of account

- o MS&AD Insurance Group Holdings, Inc. (Ticker – OTCMKTS:MSADY) – Ultimate Beneficial Owner of MS Amlin Corporate Member Limited

*Various Reinsurers and Retrocessionaires v. General Electric Int'l, Inc., et al.*
No. 23-11211-D

o Hartford Underwriting Agency Limited – Managing Agent of Appellant Certain Underwriters at Lloyd's, underwriting through Lloyd's Syndicate No. 1221 for the 2019 year of account

o Partner Reinsurance Europe SE – Appellant

o PartnerRe Ltd (Ticker – NYSE:PRE-J) – Ultimate Beneficial Owner of Appellant Partner Reinsurance Europe SE

o SCOR SE (OTCMKTS:SCRYY) – Ultimate Beneficial Owner of Appellant SCOR UK Company Limited

o SCOR UK Company Limited. – Appellant

o Stolze, Eric D. – Counsel for Appellees

o Talbot Underwriting Ltd – Managing Agent of Appellant Certain Underwriters at Lloyd's, underwriting through Lloyd's Syndicate No. 1183 for the 2019 year of account

o The Hartford Financial Services Group, Inc. (Ticker – NYSE:HIG) – Ultimate Beneficial Owner of Hartford Underwriting Agency Limited

o The New India Assurance Company Limited (Ticker – NSE:NIACL) – Appellant

o Tricarico, Michael J. – Counsel for Appellants

o Whitner, William K. – Counsel for Appellees

C-6

*Various Reinsurers and Retrocessionaires v. General Electric Int'l, Inc., et al.*
No. 23-11211-D

- o  XL Insurance Company SE – Appellant

- o  Zurich Insurance Group Ltd (Ticker – OTCMKTS:ZURVY) – Ultimate Beneficial Owner of Appellant Zurich Insurance plc

- o  Zurich Insurance plc – Appellant

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Local Rule 28-1(c), Appellants request oral argument. Appellants believe that oral argument would materially benefit the Court in deciding this appeal, as the subject matter and facts underlying this dispute are complex, and involve the application of federal statutory and common law, as well as the application of the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (referred to herein as the "New York Convention").

# **TABLE OF CONTENTS**

STATEMENT REGARDING ORAL ARGUMENT ..........................................i

TABLE OF CONTENTS ....................................................................ii

TABLE OF CITATIONS  ..................................................................iv

STATEMENT REGARDING JURISDICTION ...............................................vi

STATEMENT OF THE ISSUES......................................................ix

STATEMENT OF THE CASE ........................................................ 1

    A.   The Subject Loss and Appellant's Claims ....................... 6
    B.   Subsequent Pleadings and Motion Practice .................... 8
    C.   The Order........................................................... 13

SUMMARY OF THE ARGUMENT ............................................... 14

STANDARD OF REVIEW.............................................................. 16

ARGUMENT AND CITATIONS OF AUTHORITY.................................. 16

    I.    The District Court Erred In Compelling Appellants To
        Arbitrate As Purported Third-Party Beneficiaries Of The
        Service Contract ................................................ 16

        A.   SKH Is At Most An Incidental Beneficiary To The
           Services Contract...................................... 18

        B.   Appellants Do Not Assert Any Purported
           Contractual Rights Against Appellees................. 26

ii

II.    To The Extent It Is Considered By This Court, The
       Doctrine of Estoppel Is Likewise Inapplicable ............... 32


CONCLUSION……...…....... .......................................................................... 35

iii

## TABLE OF CITATIONS

**Cases**                                                                      **Page(s)**

*Am. Personality Photos, LLC v. Mason*,
   589 F. Supp. 2d 1325 (S.D. Fla. 2008) ............................................................. 17

*AT & T Techs., Inc. v. Commc'ns Workers of Am.*,
   475 U.S. 643 (1986) ...................................................................................... 17

*Bahamas Sales Assoc., LLC v. Byers*,
   701 F.3d 1335 (11th Cir. 2012) ........................................................................ 34

*Carson v. Home Depot, Inc.*,
   2022 WL 2954327 (N.D. Ga. July 26, 2022) ................................................... 33

*Czarina, L.L.C. v. W.F. Poe Syndicate*,
   358 F.3d 1286 (11th Cir. 2004) ........................................................................ 17

*Dye v. Tamko Bldg. Prod., Inc.*,
   908 F.3d 675 (11th Cir. 2018) .......................................................................... 16

*\*E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*,
   269 F.3d 187 (3d Cir. 2001) ............................................................................. 30

*GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*,
   207 L. Ed. 2d 1, 140 S. Ct. 1637 (2020) .......................................................... 17

*\*Greene v. Peloton Interactive Inc.*,
   566 F. Supp. 3d 1299 (N.D. Fla. 2021) .................................................... 31, 3/8

*\*Hogan v. SPAR Grp., Inc.*,
   914 F.3d 34 (1st Cir. 2019) ................................................................. 19, 22-25

*In re Checking Acct. Overdraft Litig.*,
   754 F.3d 1290 (11th Cir. 2014) ........................................................................ 16

iv

*In re Humana Inc. Managed Care Litig.*,
    285 F.3d 971 (11th Cir. 2002)....................................................... 33-34

*\*Indus. Elecs. Corp. of Wisconsin v. iPower Distribution Grp., Inc.*,
    215 F.3d 677 (7th Cir. 2000)........................................................ 30

*\*Interface Kanner, LLC v. JPMorgan Chase Bank, N.A.*,
    704 F.3d 927 (11th Cir. 2013)...................................................... 18

*\*InterGen N.V. v. Grina*,
    344 F.3d 134 (1st Cir. 2003) ....................................................... 18-25

*Martinez v. Carnival Corp.*,
    744 F.3d 1240 (11th Cir. 2014)...................................................viii

*\*MS Dealer Serv. Corp. v. Franklin*,
    177 F.3d 942 (11th Cir. 1999).......................................... 17-18, 27-29

*Noble Drilling Servs., Inc. v. Certex USA, Inc.*,
    620 F.3d 469 (5th Cir. 2010)........................................................ 34

*Simmons Hous., Inc. v. Shelton ex rel. Shelton*,
    36 So. 3d 1283 (Miss. 2010) ........................................................ 34

*Singh v. Carnival Corp.*,
    550 F. App'x 683 (11th Cir. 2013) ............................................... 16

*Sungaralingum v. Carnival Corp.*,
    2021 WL 7542971 (S.D. Fla. Feb. 18, 2021).................................. 16

*United States v. Crown Equip. Corp.*,
    86 F.3d 700 (7th Cir. 1996) ......................................................... 32

Statutes

9 U.S.C. § 201 ............................................................................... vi
9 U.S.C. § 203 ............................................................................... vi

## STATEMENT REGARDING JURISDICTION

On May 16, 2023, Appellants submitted a Response to Jurisdictional Questions from this Court, which sets forth, in detail, Appellants' position regarding the Court's jurisdiction over the subject matter of this dispute, and over the current appeal.

As stated therein, the limited issue currently before the Court on appeal is whether Appellants should be compelled to arbitrate under the New York Convention.  As codified under the United States Code, 9 U.S.C. § 201, *et seq.*, the New York Convention bestows upon the district courts of the United States, federal question jurisdiction for the purpose of addressing whether arbitration should be compelled thereunder.  *See* 9 U.S.C. § 203 ("An action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States. The district courts of the United States …  shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy."); *see also Cheruvoth v. SeaDream Yacht Club, Inc.*, 2020 WL 6263013, at *1 (S.D. Fla. Oct. 22, 2020), *aff'd*, No. 20-14450, 2021 WL 4595177 (11th Cir. Oct. 6, 2021) ("[F]ederal courts have original [subject-matter] jurisdiction over any

action or proceeding falling under the Convention … because they are deemed to arise under the laws and treaties of the United States.").

As for the current appeal, Appellants seek review, and a reversal, of a March 17, 2023, Order entered by the United States District Court for the Northern District of Georgia (the "District Court"), which granted Appellees' motion to compel arbitration in part, insofar as it requires the threshold issue of arbitrability to be decided by an arbitration panel. (See Dist. Ct. Dkt. 29.) While the Order did "refer the issue of whether Plaintiffs' claims fall within the scope of the [arbitration provision] to the arbitrator," the Court denied as moot any and all remaining applications before the Court, and stated that "the Clerk is **DIRECTED** to administratively close the case," subject to being reopened solely "for the purpose of confirming or seeking to vacate any arbitral award or for any other relief in furtherance of the arbitration permitted by applicable law." (*Id.* at 13, 15-16). The District Court effectively left nothing further to adjudicate at this time.

Eleventh Circuit case law is clear that the administrative closure of a case following an Order compelling arbitration, which leaves nothing further for a district court to adjudicate at that time, is "functionally final"

and therefore immediately appealable.  *Martinez v. Carnival Corp.*, 744 F.3d 1240 (11th Cir. 2014) ("What matters is whether the case, in all practicality, is finished. In this case, the district court not only administratively closed the case, but it also denied all pending motions as moot and compelled arbitration. The district court's order was a functionally final and appealable decision because it left nothing more for the court to do but execute the judgment.").  That is precisely the case here; at this juncture, the case is closed, and nothing further will be adjudicated by the District Court unless an application to reopen is be made in connection with the arbitration.  (Dist. Ct. Dkt. 29).  As the Order is "functionally final," it is immediately appealable, and this Court therefore has appellate jurisdiction.

Finally, Appellants state that, as the Order was entered on March 17, 2023 (*see* Dist. Ct. Dkt. 29), and Appellants' Notice of Appeal was filed on April 13, 2023 (*see* Dist. Ct. Dkt. 32), the instant appeal is timely pursuant to Fed. R. App. P. 4(a)(1)(A), which requires Notices of Appeals in Civil cases to "be filed with the district clerk within 30 days after entry of the judgment or order appealed from."

## STATEMENT OF THE ISSUES

Did the District Court err in compelling arbitration of the current dispute between Appellants and Appellees, on the grounds that Appellants qualify as third-party beneficiaries of a contract between one of the Appellees and a third-party?

Respectfully, the District Court erred in reaching this conclusion. The District Court did not, as it should have, analyze the relevant contract for a specific legal right, which inures to the benefit of, and is enforceable by, Appellants' subrogor. The "direct" benefit identified by the Court—Appellees' provision of equipment to a commercial property owned by Appellants' subrogor—is insufficient to establish that Appellants' subrogor is a third-party beneficiary of the contract. Furthermore, even if Appellants' subrogor did qualify as a third-party beneficiary of any rights under the contract, Appellants do not seek to assert any of those rights in the within action, and consequently, Appellees' motion should have been denied regardless.

## STATEMENT OF THE CASE

In its March 17, 2023 Order (the "Order"), the District Court granted Appellees' motion to compel arbitration of this subrogation lawsuit brought by Appellants.  The District Court did not do so because Appellants or their subrogor had entered into an agreement to arbitrate their dispute(s) with Appellees; in fact, it is undisputed that no such agreement exists.  Rather, the District Court determined that Appellants' subrogor (and therefore, Appellants) qualify as third-party beneficiaries under a contract that Appellees entered into with a third party, which contains an arbitration provision.  Respectfully, and as discussed below, the District Court misapplied the law governing when a non-signatory to an arbitration agreement may be compelled to arbitrate, and the Order should therefore be reversed.

This lawsuit arises out of the catastrophic losses sustained at the Hadjret En Nouss Power Plant in Tipaza, Algeria (the "Power Plant") on October 14, 2019, when a component in the Power Plant's gas turbine known as a "Section 1 Blade" or a "Stage 1 Blade" ("S1B") became liberated due to an inherent defect, causing tens of millions of dollars in property

damage and business losses to the Power Plant's owner, Shariket Kahraba Hadjret En Nouss ("SKH").

Appellants are the various reinsurers and/or retrocessionaires that reimbursed SKH for those losses, and are now subrogated to SKH's rights. Appellees General Electric International, Inc. ("GE International"), General Electric Company ("GE Company"), GE Power Services Engineering ("GE Power Engineering"), and GE Power (collectively, "Appellees"), are the companies that, upon information and belief, designed and/or manufactured the defective S1Bs, and the parties ultimately liable for the losses at issue. As subrogees of SKH, Appellants have asserted various common-law tort claims and statutory violations against Appellees, but no contractual claims (indeed, they have none to assert).

SKH (Appellants' subrogor) has never entered into any contract with the Appellees relating to the S1Bs, and certainly never agreed to arbitrate its disputes with Appellees. These material facts have never been disputed by Appellees. Nonetheless, after Appellants filed suit against Appellees in the Georgia State-wide Business Court, Appellees removed the case to the District Court, and then separately moved to compel arbitration pursuant to The Convention on the Recognition and Enforcement of Foreign Arbitral

Awards, 9 U.S.C. § 201, *et seq.* (the "New York Convention").  Appellees contended that, under third-party beneficiary and/or estoppel theories, Appellants (as subrogees of SKH), were bound by arbitration clauses contained within one or more contracts relating to services that Appellees performed at the Power Plant, all of which were entered into strictly with the operator of the Power Plant, SNC-Lavalin Constructeurs International Inc. ("SNC").

In its Order, the District Court ultimately concluded that arbitration could be compelled pursuant to a contract entered into by and between GE International and SNC, relating to Appellees' "[p]eriodic inspection, testing, repair, and/or replacement of components" at the Power Plant (the "Services Contract").  Specifically, the Court held that SKH, as Appellants' subrogor, "was conferred a benefit as a result of SNC's entry into the Services Contract, and that enforcement of the agreement under a third-party beneficiary doctrine is warranted . . . ."

Respectfully, the Court erred in reaching this conclusion, for two key reasons.  First, it is well-settled that a party is not a third-party beneficiary of a contract containing an arbitration clause merely because it will obtain some benefit from the parties' performance of that contract.  Rather, it must

3

be shown with special clarity that a party was intended to be provided with *specific legal rights* under the contract at issue. The District Court, respectfully, did not properly analyze this issue. It did not identify any rights in the Services Contract specifically inuring to the benefit of SKH. In fact, the sole "legal right" in the Services Contract that the District Court referenced in its Order (a warranty that the products provided under the Services Contract would be free from defects) was undisputedly directed *solely to* SNC. Furthermore the District Court erred in finding that the warranty "would appear to cover the Incident" as the one year warranty (provided to SNC and not SKH) had expired.[1]

This should have been the end of the District Court's inquiry. Having identified no provisions specifically bestowing enforceable rights relevant to the Incident upon SKH, the District Court should have denied the motion to compel arbitration. Instead, the District Court concluded that SKH, as the owner of the Power Plant, would benefit from GE's performance of its obligations under the Services Contract. Respectfully,

---

[1] The warranty expired one year after installation of any parts, and as the District Court noted, the blades in question were installed in April 2018, i.e. more than one year prior to the catastrophic failure.

4

this result was inconsistent with well-settled law on the issue, and the Order must therefore be reversed.

Putting that aside, even *if* any provision of the Services Contract (or any other contract) allegedly inuring to the benefit of SKH crossed the third-party beneficiary threshold, the District Court *still* should have denied the motion to compel arbitration. This is because Appellants have not asserted any contractual rights against Appellees, of which they are an alleged third-party beneficiary. The District Court held in the Order that the facts necessary to establish Appellants' claims "would necessarily constitute a breach of the Services Contract." But, Appellees have an obligation to safely design and manufacture S1Bs pursuant to statutory and common law. *Those* are the obligations that Appellants contend Appellees have breached, and the fact that a breach of those obligations might also incidentally constitute a breach of Appellees' contractual obligations to *SNC alone* is immaterial to the analysis. Appellants have not asserted that Appellees have breached the terms of the Services Contract (or any other contract), and in fact, in their operative complaint, Appellants have eliminated any suggestion that they are relying upon any part of the Services Contract to support their claim.

As this suit relates simply to Appellees' safe design and manufacture of the S1Bs, and not their contractual obligations to SNC, Appellees motion to compel arbitration should have been denied.

For these reasons, and those detailed further herein, Appellants respectfully contend that the District Court erred in issuing the Order. Accordingly, the Order should be reversed, and the parties should be left to resolve their claims through the litigation process.

### A.    The Subject Loss and Appellants' Claims

SKH, Appellees' subrogor, owns the Power Plant, which was constructed and is currently operated by SNC. (Dkt. 18, at ¶¶ 42-44.) The Power Plant consists of three "Power Trains" that are fitted with gas turbines. (*Id.* at ¶ 46.). The gas turbines, in turn, contain rows of blades that rotate at high speeds in the energy production process. (*Id.* at ¶ 1, 47-49). The blades at issue in this case—*i.e.*, the S1Bs manufactured and/or designed by one or more of the Appellees—are contained within the first row of the turbine blades, and are the most crucial to the energy production process. (*Id.* at ¶¶ 48-50.)

The S1Bs are not a product that was designed and/or manufactured specifically for SNC and/or SKH. The S1Bs are a product that Appellees

6

have designed, manufactured, and made available for purchase to their client base as a whole. (*Id.* at ¶ 50). Appellees' S1Bs have been placed in power plants around the globe, both domestically in the United States, and internationally. (*Id.* at ¶¶ 56-74). And, the design and manufacture of the S1Bs has gone through several iterations, as issues with the S1Bs have resulted in consistent losses around the world similar to those suffered by SKH. (*Id.* at ¶¶ 50-51, 56-74).

SKH's losses occurred on October 14, 2019, when a S1B, which was designed and manufactured by one or more of the Defendants,[2] became liberated in its power train while rotating at 3,000 revolutions per minute, during operation at the Power Plant. (*Id.* at ¶ 1). It is believed that this liberation event, and other similar events that have occurred around the globe (*id.*), are a result of cracking in the S1Bs, which in turn resulted from issues with Defendants' heat treatment process and/or the coating of the S1Bs, (*id.* at ¶ 81).

As a result of the October 14, 2019 incident, Appellants—as reinsurers and retrocessionaires—were required to pay tens of millions of

---

[2] Discovery has not yet been conducted, and therefore the precise role of each of the individual Appellees remains unknown to Appellants.

dollars to SKH, and as such, became subrogated to the rights of SKH for those sums.  (*Id.* at ¶ 84.)  Consequently, Appellants filed their initial Complaint (the "Original Complaint") against Appellees in the Georgia State-wide Business Court, asserting causes of action for negligence, gross negligence, strict products liability, breach of the warranty of merchantability, negligent/fraudulent misrepresentations, and violations of Algerian Civil Code Article 124, and Algerian Civil Code Article 140 BIS. (Dkt. 1-1.)  Appellees then filed a Notice of Removal, bringing this matter before the District Court.  (Dkt. 1.)

### B.    Subsequent Pleadings and Motion Practice

After filing their Notice of Removal, and after the parties engaged in an unsuccessful mediation, Appellees filed a motion to compel arbitration,[3] arguing principally that the arbitration clause within the Services Contract required SKH (and by extension, Appellants) to arbitrate their dispute with Appellees.  (Dkt. 15-1, at pg. 6.)

---

[3] The motion to compel arbitration also requested, in the alternative, dismissal of certain aspects of the Original Complaint.  As discussed in greater detail *infra*, the parties have since agreed to resolve all substantive issues with respect to the claims, if litigation is to proceed, in state court, and to address only the motion to compel arbitration in federal court.

The Services Contract, as produced in an excerpted and translated format by Appellees in connection with their motion to compel arbitration (*see* Dkt. 15-3), was entered into by and between SNC as "Operator," and GE International as "Service Provider." (*Id.* at pg. 9). The Recitals in the Services Contract state that "the Operator wishes to use the Service Provider's services to provide Maintenance Services or for the Power Train Sets that form part of the Power Station as defined hereinafter." (*Id.* at pg. 9).

Section 1.35 of the Services Contract, referred to and relied upon by the District Court in the Order, states in pertinent part as follows:

1.35 Scheduled Maintenance

Periodic inspection, testing, repair, and/or replacement of components of the Power Train Set (for further details refer to Appendix 12 "Service Provider's Scheduled Maintenance"), as reasonably necessary in light of deterioration of the Power Train sets due to normal wear and tear, in accordance with the manufacturers' recommendations under this Agreement and Prudent Industry Practices.

The repair and/or replacement of components and parts of a Power Train Set during any Scheduled Maintenance shutdown, and in accordance with Prudent Industry Practices, that is reasonably determined to be necessary prior to the next Scheduled Maintenance shutdown in order to continue safe Operation, with the exception of what are deemed to be Additional Services.

(*Id.* at pg. 10, § 1.35).

Section 9.9 of the Services Contract, also expressly referred to in the

Order, states in pertinent part as follows:

> The Service Provider warrants to the Operator that the Parts and Machinery delivered during the term of this Agreement, and the Parts and Tools in the Initial Inventory, shall be free from defects in material, workmanship and title and that the Services performed during the term of this Agreement shall be performed in a competent, diligent manner.
>
> *            *            *
>
> This warranty shall expire, in the case of Parts and Tools, either one (01) year after the Service Provider's installation of said Parts and Tools in the Power Station or forty-eight (48) months after the date of their delivery on-Site, with the first of these dates being applicable, and, in the case of the Services, one (01) year after the performance of said service, it being specified that all warranties shall expire no later than one (01) year after the expiration or termination of this Agreement. It is hereby stipulated that the Service Provider shall ship the Parts and Tools not more than three (03) years prior to the date of their scheduled use. Should some Parts be shipped more than three (03) years prior to the date of their scheduled use, their warranty shall be extended until the first of the following dates: (i) their installation by the Service Provider, or (ii) one (01) year after the expiry or termination of this Agreement. Any defect forming the subject of a claim under warranty may not give rise to an extension of the warranty period.
> (*Id.* at pg. 21, § 9.9.)

As noted *supra* at page 12, at the time Appellees filed the motion to compel arbitration, the Original Complaint was the operative pleading. In the motion to compel arbitration, Appellees emphasized a single sentence in the Original Complaint where Appellants purportedly sought relief under the Services Contract; that is, Appellants' request for "[e]quitable relief, including but not limited to a declaration that GE Defendants are in violation of their respective contractual duties . . . ." (Dkt. 15-1, at pg. 9.) Appellants believe that Appellees grossly overstated the significance of this allegation. Nonetheless, in a good faith attempt to avoid motion practice and resolve the purported issues raised by Appellees, Appellants filed an Amended Complaint (now the operative Complaint in this litigation. (Dkt. 18.), The Amended Complaint removed the referenced request for equitable relief, as well as a few other sparse statements that Appellees might possibly argue (albeit incorrectly so) are dependent upon the Services Contract. (*See* Redlined Amended Complaint at Dkt. 18-1.)

Despite the revisions made in the Amended Complaint, after it was filed, Appellees proceeded to file a second motion to compel arbitration.

(Dkt. 21.)[4]    Again, Appellees relied principally on an arbitration clause contained within the Services Contract, and argued that, notwithstanding SKH's non-signatory status under that agreement, Appellants should be required to arbitrate their claims against Appellees under third-party beneficiary and/or estoppel theories.    (Dkt. 21-1.)[5]    Appellees also contended that they were entitled to compel arbitration pursuant to the Operation and Maintenance Contract entered into between SKH and SNC on or about July 15, 2006 (the "O&M Contract").    (Dkt. 21-1, at pg. 2.)

---

[4] Just like the initial motion to compel arbitration relating to the Original Complaint, the second motion to compel arbitration relating to the Amended Complaint requested dismissal of certain aspects of Appellants' claims on the merits. (Dkt. 21.).  After the motion was filed, the parties had discussions concerning whether the District Court had subject matter jurisdiction over the substantive claims in the action.  Ultimately, a joint motion was made to the District Court requesting that only the arbitration-related issues be addressed, and that if arbitration was not compelled, the parties would consent to remand the case back to state court.    This application was granted by the District Court on August 16, 2022.  (Dkt. 25.)

[5] Appellees also referenced arbitration provisions contained within three other contracts between SNC and one or more of the Appellees—the "Supply Contract," which was purportedly "for the purchase of turbines and their respective packages," the "Installation Contract," purportedly for Appellees' "installation and start-up of the Power Train Sets," and "Coordination Agreement" relating to one or more of the foregoing.  (Dkt. 21-1, at pg. 10 n.11.)   Aside from referencing the arbitration provisions therein, Appellees provide no substantive discussion of the rights afforded therein, to which Appellants are allegedly third-party beneficiaries.

12

Appellants opposed the motion to compel arbitration, highlighting that the narrow non-signatory doctrines relied upon by Appellees did not apply for several reasons.  (Dkt. 26.)

### C.     <u>The Order</u>

The District Court issued the Order on March 17, 2023.  (Dkt. 29.)  At the outset, the District Court recognized that SKH "did not execute any written arbitration agreement with [Appellees]."  (*Id.* at pg. 8.)  And, the Court determined that it "need not reach th[e] issue" of whether estoppel applied.  (*Id.* at pg. 13 n.5.)

The District Court went on to determine whether SKH was a third-party beneficiary of the Services Contract.  In analyzing the issue, the District Court did not identify any provisions in the Services Contract bestowing any specific and enforceable rights upon SKH that would be germane to the Incident.  Rather, the District Court, upon reviewing the Services Contract (particularly §§ 1.35 and 9.9 thereof), concluded that "providing parts for the Power Plant for the benefit of the 'Project Owner' was a basic objective of the contract at the time of its formation."  (*Id.* at pg. 11.)  Significantly, in reviewing the warranty provision contained within § 9.9 of the Services Contract, the District Court correctly recognized that

13

"the warranty was directed to SNC," but nonetheless concluded that "[SKH] received the benefit of this warranty." (*Id.* at pg. 12.) The District Court further concluded that the warranty "would appear to cover the Incident." (*Id.*)

Ultimately, this led the District Court to conclude that the Services Contract "conferred direct tangible benefits in form [sic] of replacement parts which [SKH] would own as a result of their ownership of the Power Plant, and legal benefits in the form of [Appellees'] warranty of those parts." (*Id.* at pg. 12.) Moreover, the Court concluded that "the facts necessary to establish [Appellants'] claims would necessarily constitute a breach of the Services Contract." (*Id.* at pg. 13.) And ultimately, the District Court concluded that "the facts of the case support application of the third-party beneficiary doctrine." (*Id.*)

Appellants respectfully contend that the District Court erred in its holding, and consequently, the Order should be reversed.

## SUMMARY OF THE ARGUMENT

On appeal, Appellants contend that the District Court erred in concluding that SKH (and by extension, Appellants) are subject to the arbitration provision in the Services Contract by way of the third-party

14

beneficiary doctrine. As detailed below, Appellants raise two principal bases for this argument. First, the District Court erred in concluding that SKH was an intended beneficiary that was provided a "direct" benefit under the Services Contract, when in fact, SKH was, at most, an incidental beneficiary to that contract. In this regard, the relevant case law dictates that there must be specific legal rights conferred upon an alleged third-party beneficiary in order for the doctrine to apply, and the Court did not identify any such rights in its analysis of the Services Contract.

Second, even if there were specific legal rights identifiable in the Services Contract meeting this threshold, for which SKH could be deemed a third-party beneficiary, Appellants have not sought to enforce any such rights against Appellees in this action. Appellants merely seek to hold Appellees responsible for their undisputed duties at common law and under statute, which require Appellees to safely manufacture and design their products even in the absence of a written contract.

Finally, Appellants note that, in addition to arguing that SKH was a third-party beneficiary of the Services Contract, Appellees also argued in their briefing below that the additional non-signatory doctrine of estoppel applies here. The District Court did not address this issue, but as this

15

Court exercises *de novo* review on this appeal, Appellants reiterate below that this additional doctrine is likewise inapplicable, as again, Appellants have not sought to enforce any purported contractual rights against Appellees in this lawsuit.

For these reasons, which are expanded on in detail below, the Order should be reversed, and the parties should proceed to litigate their dispute.

## STANDARD OF REVIEW

This Court reviews *de novo* an order granting a motion to compel arbitration. *In re Checking Acct. Overdraft Litig.*, 754 F.3d 1290, 1293 (11th Cir. 2014) ("We review de novo a district court order granting a motion to compel arbitration."); *Dye v. Tamko Bldg. Prod., Inc.*, 908 F.3d 675, 680 (11th Cir. 2018) ("We review de novo the district court's order granting Tamko's motion to dismiss and compel arbitration.").

## ARGUMENT AND CITATIONS OF AUTHORITY

## I.    The District Court Erred In Compelling Appellants To Arbitrate As Purported Third-Party Beneficiaries Of The Services Contract

In order to compel arbitration under the New York Convention, Appellees "bear[] the burden of proving each of [its] jurisdictional prerequisites," which includes a showing that "there is an agreement in

16

writing to arbitrate the dispute." *Singh v. Carnival Corp.*, 550 F. App'x 683, 685 (11th Cir. 2013); *see also Sungaralingum v. Carnival Corp.*, 2021 WL 7542971, at *6 (S.D. Fla. Feb. 18, 2021), *citing Czarina, L.L.C. v. W.F. Poe Syndicate*, 358 F.3d 1286, 1293 at n.3 (11th Cir. 2004) (same holding).

Appellants recognize that, in certain narrow circumstances, non-signatories to an arbitration agreement can be compelled to arbitrate. *See GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, 207 L. Ed. 2d 1, 140 S. Ct. 1637, 1645 (2020). However, it is black letter law that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986). Thus, "[a] court should be wary of imposing a contractual obligation to arbitrate on a non-contracting party," and "careful consideration" must be given when deciding whether to "[c]ompel[] a non-signatory to arbitration." *Am. Personality Photos, LLC v. Mason*, 589 F. Supp. 2d 1325, 1330–31 (S.D. Fla. 2008).

One of these limited exceptions to the general rule that only contracting parties should be bound to arbitrate "arises when the parties to a contract together agree, upon formation of their agreement, to confer

17

certain benefits thereunder upon a third party, affording that third party rights of action against them under the contract." *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999).

The District Court concluded in the Order that SKH was a third-party beneficiary of the Services Contract, and therefore, that Appellants (as SKH's subrogees) are bound by its arbitration clause. As discussed below however, this holding was an erroneous one, because (i) SKH was, at most, an incidental beneficiary of the Services Contract, as evidenced by the fact that the District Court did not identify any specific relevant legal rights inuring to the benefit of SKH; and (ii) even if SKH was deemed to be a third-party beneficiary of any such rights under the Services Contract, Appellants, as SKH's subrogees, do not seek to assert any such rights against Appellees.

## A.    SKH Is At Most An Incidental Beneficiary To The Services Contract

Not every party that derives a benefit from a contract is a third-party beneficiary; indeed, the Eleventh Circuit has stated that "a beneficiary whose benefit is merely incidental has no right to sue to enforce a contract as a non-party." *Interface Kanner, LLC v. JPMorgan Chase Bank, N.A.*, 704

F.3d 927, 932–33 (11th Cir. 2013); *see also InterGen N.V. v. Grina*, 344 F.3d 134, 147 (1st Cir. 2003) ("There is an important distinction between a nonsignatory who may benefit from a signatory's exercise of its contractual rights . . . and a third-party beneficiary.").

Circuit Courts addressing the issue under federal common law have stated that there must be " 'special clarity' to support a finding 'that the contracting parties intended to confer a benefit' on a third party," *see InterGen N.V. v. Grina*, 344 F.3d 134, 146 (1st Cir. 2003), and that the contracting parties must "manifest an intent to confer *specific legal rights*" upon the purported beneficiary. *See Hogan v. SPAR Grp., Inc.*, 914 F.3d 34, 40 (1st Cir. 2019) (emphasis added).

Under the foregoing standard, Appellees failed to meet their burden of establishing, and the District Court failed to properly analyze, how SKH (and by extension, Appellants) is more than an incidental beneficiary to any of the promises contained within the Services Contract. Relatedly, the District Court was unable to identify any specific relevant legal rights to which SKH was made a third-party beneficiary.

The District Court emphasized §§ 1.35 and 9.9 of the Services Contract in the Order, concluding that those sections of the contract

19

provided benefits to SKH in the form of the provision of parts at the Power Plant (§ 1.35) and warranties relating to those parts (§ 9.9). (Dkt. 29, at pg. 11.) However, *neither* clause explicitly confers any substantive rights, or any rights of action, upon SKH. Section 1.35 does not provide any indication that the parts are being provided for the benefit of any party other than SNC. As for § 9.9, even if there was an explicit intention to extend the benefit of the warranty to SKH (there was not, *see infra*), the warranty did not "cover the Incident," as the District Court concluded; the warranty ran for a one year period after the installation of parts, and as the District Court observed in its Order, the S1Bs at issue here were installed in April 2018—more than a year prior to the October 14, 2019 incident. (*Id.* at pg. 12.)

However, even assuming that the warranty were in effect at the time of the incident, § 9.9 *explicitly* states that the *only* party receiving the benefit of any warranties for goods or services provided is SNC. (Dkt. 21-3, at pg. 21 ["The Service Provider *warrants to the Operator* that the Parts and Machinery delivered during the term of this Agreement . . . shall be free from defects . . . ."].). Of note, the District Court recognized that "the warranty [under § 9.9 of the Services Contract] was directed to SNC."

(Dkt. 29, at p. 14).  As the warranty under § 9.9 was the only arguable legal right that *any* party could possibly enforce under the Services Contract, and it explicitly inures solely to the benefit of SNC, the District Court's inquiry should have ended here.

*InterGen N.V. v. Grina*, 344 F.3d 134 (1st Cir. 2003) remains remarkably on point with regard to the factual scenario that exists here.  In that case, a foreign energy company sued a gas turbine manufacturer after turbines produced by the manufacturer failed. *Id.* at 138-39. The defendant manufacturer, which had entered into purchase orders, services agreements and support agreements with the energy company's subsidiaries, sought to compel arbitration based on arbitration clauses contained in each of those agreements, under the New York Convention. *Id.*  As the energy company was a non-signatory to the agreements with the subsidiaries, the defendant manufacturer raised, *inter alia*, the third-party beneficiary doctrine.  *Id.* at 146. The Court acknowledged that the energy company might have derived some benefit from the underlying projects, but nonetheless denied the motion, recognizing that a nonsignatory "benefit[ting] from a signatory's exercise of its contractual rights," or an "intimate corporate relationship" between a signatory and

21

non-signatory, is insufficient to confer third-party beneficiary status. *Id.* at 147.

The District Court ultimately found that *InterGen* was inapplicable to the instant case, which was, respectfully, an erroneous determination. In reaching its conclusion, the District Court reasoned that because SNC was responsible for operating the Power Plant under the O&M Contract, and because SNC in turn retained GE International pursuant to the Services Contract, it must be inferred that "providing parts for the Power Plant for the benefit of the 'Project Owner' was a basic objective of the contract at the time of its formation." (Dkt. 29, at pg. 11.) Moreover, the District Court here purported to distinguish *InterGen* by stating that there, the "benefit" to the non-signatory was merely its equity stake in its subsidiary's operations, whereas here, "the Service[s] Contract conferred direct tangible benefits in [the] form of replacement parts which [SKH] would own as a result of their ownership of the Power Plant, and legal benefits in the form of Defendants' warranty of those parts." (*Id.* at p. 12.)

Contrary to the District Court's determination, the conclusion that *InterGen* is materially distinguishable because of SKH's ultimate ownership of parts and ultimate benefit of warranties is incorrect. In *Hogan v. SPAR*

22

*Grp., Inc.*, 914 F.3d 34 (1st Cir. 2019), two closely affiliated companies known as SPAR and SBS had an arrangement, whereby SBS (a staffing company) would provide personnel to SPAR (a retail service provider) for the purpose of carrying out SPAR's work. *Id.* at 36-37. Of note, SBS, would provide SPAR with "substantially all" of its personnel. *Id.* SBS would accomplish this objective by directly entering into independent contractor agreements (which contained arbitration clauses) with certain individuals, who would then proceed to perform work directly on SPAR's behalf. *Id.* In the course of this arrangement, a worker brought claims for unpaid wages against SBS and SPAR, and SPAR sought to compel arbitration of the dispute as a third-party beneficiary of the independent contractor agreement. *Id.* at 39.

Beyond the fact that the independent contractor agreement in *Hogan* provided a direct benefit to SPAR in the form of services, the Court acknowledged that the agreement also potentially bestowed upon SPAR, as SBS' customer, explicit rights and benefits, including the right to "dictate certain work requirements to the independent contractor." *Id.* Nevertheless, the Court reviewed the independent contractor agreement for "specific legal rights" conferred upon SPAR that were sought to be

23

enforced, and found that none existed. *Id.* ("[E]ven if SPAR could be said to benefit from the [work requirements] clause, 'a mere benefit to the nonsignatory resulting from a signatory's exercise of its contractual rights is not enough. . . . Rather, the contract must 'mention [or] manifest an intent to confer specific legal rights upon [SPAR],' and the contract language that SPAR points us to does not make the cut.").

In particular, the *Hogan* Court specifically examined whether there was an intention to make SPAR a third-party beneficiary of the arbitration agreement, which in that case, was the specific provision that SPAR sought to enforce against the independent contractor. *Id.* The arbitration provision, however, strictly covered disputes "between the parties"; as such, the Court concluded "that it does not confer arbitration rights to SPAR or any third party." *Id.*

*Hogan* highlights several key errors in the District Court's decision and its rejection of *InterGen*. For one, in *Hogan*, the contract containing the arbitration clause was entered into for the purpose of providing staffing personnel to the non-signatory. Unquestionably, an agreement to provide services directly to a third-party (as was the case in *Hogan*), is not materially different than an agreement to provide equipment to a third-

24

party (which is the "direct benefit" that the District Court found to exist here). Since the District Court's only basis for distinguishing *InterGen*, which is otherwise on all fours with this case, was the fact that the alleged benefit there was the interplay between a parent and its subsidiary, and not the provision of parts or services to a third-party, *Hogan* demonstrates that the District Court's rejection of *InterGen* was simply improper.

Two, in *Hogan*, the Court reviewed the contract at issue to determine what *specific* rights, if any, the non-signatory had as a third-party beneficiary. The relevant contractual provision there was, coincidentally, the arbitration clause itself. And the Court determined, based on the specific language of that provision, that there was no intent to confer a benefit (*i.e.*, the right to arbitrate) upon the non-signatory. Here, the District Court did not identify a specific contractual provisions to which SKH was an intended beneficiary (indeed, the two provisions relied upon by the District Court do not specifically confer any rights upon SKH), and thus the Court erred in determining that the cited contractual provisions (§§ 1.35 and 9.9 of the Services Contract) established SKH's status as a third-party beneficiary.

To be sure, there is no question that if any of the Appellees and SNC *wanted* to have drafted the Service Contract to specifically create rights in SKH's favor, they could have. As the District Court observed, the Services Contract was "the product of negotiations between sophisticated parties," and those parties "presumably understand the legal impact of conferring a substantial benefit on a non-executing third party." (Dkt. 29, at pg. 11 n.4.) Sections 1.35 and/or 9.9 could have been drafted in a manner that plainly bestowed an enforceable benefit on SKH, or *any* party other than SNC. They were not drafted as such, however, and therefore this Court should decline any invitation to extend the benefit of those provisions (and the Services Contract as a whole) to any party other than SNC.

At bottom, the Court erred in concluding that SKH was anything more than an incidental beneficiary of the Services Contract, and for this reason alone, the Order must be reversed.

## B.  Appellants Do Not Assert Any Purported Contractual Rights Against Appellees

SKH's status as an incidental beneficiary with respect to the Services Contract is grounds for a reversal of the Order without any further analysis. However, even if it were determined that SKH is a third-party

26

beneficiary with respect to any specific rights created under the Services Contract, a reversal would still be warranted, as Appellants are not seeking to enforce or assert any of those rights in this litigation.

In the Order, the District Court principally relied upon *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942 (11th Cir. 1999) both for its recitation of the standard for third-party beneficiary status (*see* Dkt. 29 at pg. 10) and for its statement that Appellants' tort and statutory claims should be referred to arbitration (*see id.* at p. 9 [holding that "a party may not avoid broad language in an arbitration clause by attempting to cast its complaint in tort rather than contract"). Respectfully, the District Court misapplied *MS Dealer*, and the third-party beneficiary doctrine in general.

By way of background, in *MS Dealer*, an individual entered into a vehicle purchase agreement, which contained an arbitration clause. *Id.* at 944-45. The purchaser also entered into a retail installment contract (which was incorporated by reference into the purchase contract), wherein she was charged $990 for a service contract with a third party (MS Dealer). The purchaser brought claims against the seller, the credit company that entered into the retail instalment contract, and MS Dealer (which was a non-signatory to the other contracts), alleging essentially that the $990

27

charge was excessive, and MS Dealer sought to compel arbitration.  *Id.* at 945.

At the outset, *MS Dealer* was not a third-party beneficiary case; there, the Court ruled solely on the issue of estoppel, and stated that it "need not determine whether MS Dealer could enforce arbitration under . . . a third-party-beneficiary theory."  *Id.* at 948.  Beyond that, in articulating the relevant standard for achieving third-party beneficiary status, the *MS Dealer* Court specifically observed that a given contract must "confer certain benefits thereunder upon a third party, *affording that third party rights of action against them under the contract.*"  *Id.* at 947 (emphasis added). Thus, while not ruling specifically on the third-party beneficiary theory, the *MS Dealer* Court nevertheless astutely recognized that for the doctrine to apply, there must be (i) the creation of rights in favor of a third-party under a given contract; and (ii) an action against a contracting party seeking to enforce those rights.  *Id.*

Importantly, *MS Dealer* did not stand for the proposition, as the District Court suggested, that tort and/or statutory claims tangentially related to an underlying contract must be referred to arbitration in the first instance.  Contrary to the facts at hand here, the claims in *MS Dealer* were

28

explicitly and entirely dependent on the parties' respective contractual obligations:

> Each of Franklin's claims against MS Dealer makes reference to and presumes the existence of the $990.00 charge contained in the Retail Installment Contract, which was incorporated by reference into the Buyers Order. Although Franklin does not allege that the service contract has been violated or breached in any way, *each of her fraud and conspiracy claims depends entirely upon her contractual obligation to pay $990.00 for the service contract.*

*Id.* at 947-48 (emphasis added).

The same facts are not present here. The District Court erroneously stated in the Order that "the facts necessary to establish [Appellants'] claims would necessarily constitute a breach of the Services Contract." (Dkt. 29 at pg. 13.) But Appellants do not allege in the Amended Complaint that the Services Contract forms the basis for any of its claims, and indeed, even the District Court could not identify any rights in the Services Contract specifically intended to benefit SKH. Appellees are manufacturers of sophisticated commercial equipment, and have duties both at common law and under Algerian statutory law (which applies here) to safely produce that equipment regardless of what is stated in the Services Contract. If there were any question in this regard, Article 140 Bis

29

of the Algerian Civil Code provides that a "manufacturer shall be responsible for loss due to defects in [its] product, *even in the absence of any contractual relationship with the victim* [emphasis added]."  Appellees cannot credibly argue that their obligations to safely design and manufacture their products are exclusively or even primarily contractual, when applicable statutory law states that a claimant need not even prove the existence of a contract.

This holding is consistent with other federal courts around the United States, which have concluded that claims unrelated to a party's purported third-party beneficiary status will not be subject to arbitration. *See e.g., E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 197–98 (3d Cir. 2001) (holding that a "third party beneficiary will only be bound by the [arbitration clause] of the underlying contract where the claims asserted by that beneficiary arise from its third party beneficiary status"); *Indus. Elecs. Corp. of Wisconsin v. iPower Distribution Grp., Inc.*, 215 F.3d 677, 680 (7th Cir. 2000) ("[T]he injuries alleged by Industrial Electronics do not arise under or relate to the franchise agreement, and Industrial Electronics' status as a potential third-party beneficiary does not dispose of this case.").

*Greene v. Peloton Interactive Inc.*, 566 F. Supp. 3d 1299 (N.D. Fla. 2021)

is illustrative of this rule.  In that case, an individual purchased a treadmill,

under a contract containing an arbitration clause, and the treadmill

ultimately caused injuries to a minor child who was not a party to the

contract.  *Id.*  A suit was filed against the manufacturer of the treadmill

(Peloton), alleging common-law theories of liability.  *Id.*  Peloton attempted

to compel arbitration against the minor child, on the theory that he was a

third-party beneficiary of the contract containing the arbitration clause.  *Id.*

The Court declined to do so:

> Plaintiffs do not depend on a contractual relationship to
> establish their claims. Plaintiffs bring claims for strict liability
> and negligence, not contract. . . . Peloton became strictly liable
> for injuries caused by the Tread+ "by placing on the market a
> potentially dangerous product for use and consumption." . . .
> Therefore, if R.G. was injured by Tread+, then the strict liability
> claims arise out of Florida common law, not contract. Plaintiffs
> also allege under a negligence claim that Peloton owed R.G. a
> duty to use reasonable care in "designing, manufacturing,
> marketing, labeling, packaging, and selling" the Tread+. . . .
> Again, Plaintiffs do not allege the duty arises out of a
> contractual relationship, but rather as a result of Peloton's
> production and sale of their product. Thus, the third-part
> beneficiary doctrine does not justify compelling R.G. to
> arbitrate his claims.

*Id.*⁶  The result should be no different here.  Regardless of any contracts they entered into, Appellees had independent common-law and statutory duties to safely design and manufacture their product, and it is *only* those bases for liability that are asserted in the within action.

At bottom, the result reached by the District Court here was not supported by the authority cited in the Order, and is contrary to the general rule concerning third-party beneficiaries.  The Order should therefore be reversed.

## II.    To The Extent It Is Considered By This Court, The Doctrine Of Estoppel Is Likewise Inapplicable

The District Court, in ruling on the third-party beneficiary doctrine, declined to rule on Appellees' other basis for compelling arbitration—*i.e.*, estoppel.  To the extent those arguments are now considered by this Court

---

⁶ In the briefing leading up to the Order, Appellees asserted that the District Court should disregard any case law referring to state law, because motions to compel arbitration under the New York Convention are subject to federal common law.  Appellants do not dispute this unremarkable proposition, but note that "[i]t  is well established that, in fashioning federal common law, federal courts may, under appropriate circumstances, borrow from state law."  *United States v. Crown Equip. Corp.*, 86 F.3d 700, 706 (7th Cir. 1996).  As the District Court itself noted, suits relating to the enforcement of an arbitration agreement against a non-signatory are "less common" (Dkt. 29 at pg. 10), and therefore, it is entirely appropriate for this Court to understand how other federal courts around the United States have approached the issue.

pursuant to its *de novo* review, the doctrine of estoppel is inapplicable here as well.

To the extent there is any doubt that the third-party beneficiary doctrine applies solely when contractual claims are asserted (and there is none), there is none whatsoever with respect to the doctrine of estoppel. The Eleventh Circuit has correctly recognized that "[t]he plaintiff's actual dependence on the underlying contract in making out the claim against the . . . defendant is . . . always the *sine qua non* of an appropriate situation for applying equitable estoppel." In re Humana Inc. Managed Care Litig., 285 F.3d 971, 976 (11th Cir. 2002), *rev'd on other grounds sub nom. PacifiCare Health Sys., Inc. v. Book*, 538 U.S. 401 (2003).

Thus, like the third-party beneficiary doctrine, the estoppel doctrine is inapplicable to a motion to compel arbitration where the claims asserted are not founded in the contract containing the arbitration clause. *See e.g.*, *Carson v. Home Depot, Inc.*, 2022 WL 2954327, at *5 (N.D. Ga. July 26, 2022) ("Because the Plaintiff is not attempting to hold Home Depot to any part of the Terms of Service, her claim is not 'intimately founded in' or 'intertwined with' the contract. . . . Put differently, the Plaintiff 'would have an independent right to recover against [Home Depot] even if the contract

33

containing the arbitration clause were void."); *Bahamas Sales Assoc., LLC v. Byers*, 701 F.3d 1335, 1344 (11th Cir. 2012) (similar holding); *In re Humana Inc. Managed Care Litig.*, 285 F.3d at 976 ("Here, the doctors' suit does not rely upon or presume the existence of an underlying contract; the RICO claims in this case are based on a statutory remedy Congress has provided to any person injured as a result of illegal racketeering activities."); *Noble Drilling Servs., Inc. v. Certex USA, Inc.*, 620 F.3d 469, 474–75 (5th Cir. 2010) ("Noble's claims—by its own admission—rise or fall on the pre-purchase representations and whatever duties a manufacturer and distributor have by law. We thus conclude that the theory of direct benefits estoppel is not applicable, and Noble is not obligated to arbitrate its claims."); *Simmons Hous., Inc. v. Shelton ex rel. Shelton*, 36 So. 3d 1283, 1288 (Miss. 2010) ("We find that equitable estoppel should not be applied to this case. . . . [T]he [plaintiff's] claims are not based solely on the retail installment contract. Their claims include strict liability, negligence, and breach of warranties under the Uniform Commercial Code. Such claims are not dependent on the terms of the contract.").

Consequently, for the same reasons that the third-party beneficiary doctrine is inapplicable to Appellants' claims made purely under statutory

34

and common law (*see supra* at I(B)), the estoppel doctrine is likewise inapplicable.

## CONCLUSION

Wherefore, in light of the foregoing, it is respectfully requested that this Court reverse the Order issued by the District Court, deny Appellees' motion to compel arbitration, and permit this action to be litigated (and not arbitrated) as it should be.

Respectfully submitted this 22nd day of June, 2023.

*s/ Jonathan D. Kramer*
Jonathan D. Kramer
Georgia Bar No. 428967
Brandon R. Gossett
Georgia Bar No. 120424

**FIELDS HOWELL, LLP**
665 8th Street NW
Atlanta, Georgia 30318
(404) 214-1250 (Telephone)
(404) 214-1251 (Facsimile)
jkramer@fieldshowell.com
bgossett@fieldshowell.com

Michael J. Tricarico, Esq.
New York Bar No.: 2466878

**KENNEDYS CMK LLP**
570 Lexington Avenue
New York, New York 10011
212.252.0004 (Telephone)
Michael.Tricarico@kennedylaw.com
*Counsel for Appellants*

35

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

I certify that this brief complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because this brief contains no more than 7,608 words, excluding those portions exempted from the type-volume limit by Fed. R. App. P. 32(f). This brief complies with the typeface requirements of Fed. R. App. p. 32(a)(5) and the type-style requirements of Fed. R. App. p. 32(a)(6) because it has been prepared using Book Antiqua, a proportionally spaced typeface, at a 14-point size.

This 22nd day of June, 2023.

*s/ Jonathan D. Kramer*
Jonathan D. Kramer
Georgia Bar No. 428967
Brandon R. Gossett
Georgia Bar No. 120424

**FIELDS HOWELL, LLP**
665 8th Street NW
Atlanta, Georgia 30318
(404) 214-1250 (Telephone)
(404) 214-1251 (Facsimile)
jkramer@fieldshowell.com
bgossett@fieldshowell.com

Michael J. Tricarico, Esq.
New York Bar No.: 2466878

**KENNEDYS CMK LLP**

570 Lexington Avenue
New York, New York 10011
212.252.0004 (Telephone)
Michael.Tricarico@kennedylaw.com

*Counsel for Appellants*

## CERTIFICATE OF SERVICE

I certify that on June 22, 2023, I electronically filed the foregoing

**APPELLANTS' BRIEF** with the Clerk of Court through the U.S. Court of

Appeals CM/ECF electronic filing system, which will automatically send

notice of filing to all counsel of record. I also filed paper copies as required

by 11th Cir. R. 31-3, via the methods of transmission authorized by Fed R.

App. P. 25(a)(2)(A)(ii).

*s/ Jonathan D. Kramer*
Jonathan D. Kramer
Georgia Bar No. 428967
Brandon R. Gossett
Georgia Bar No. 120424

**FIELDS HOWELL, LLP**
665 8th Street NW
Atlanta, Georgia 30318
(404) 214-1250 (Telephone)
(404) 214-1251 (Facsimile)
jkramer@fieldshowell.com
bgossett@fieldshowell.com

Michael J. Tricarico, Esq.
New York Bar No.: 2466878

**KENNEDYS CMK LLP**
570 Lexington Avenue
New York, New York 10011
212.252.0004 (Telephone)
Michael.Tricarico@kennedylaw.com
*Counsel for Appellant*